IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
FEB 1 3 2001
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| ANTHONY T. LEE, et al., | ) |
| Plaintiffs, | ) |
| | ) C.A. No. 1056-S |
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Intervenor and Amicus Curiae, | ) |
| NATIONAL EDUCATION ASSOCIATION, INC., | ) |
| Plaintiff-Intervenor, | ) |
| v. | ) |
| GENEVA COUNTY BOARD OF EDUCATION, et al., | ) |
| Defendants. | ) |

## CONSENT ORDER

Private plaintiffs and plaintiff-intervenor United States of America ("United States") and defendant Geneva County Board of Education ("the Board" or "the school district"), having engaged in good-faith negotiations, do voluntarily agree to the entry of this Consent Order by the Court, to resolve the defendant's request for unitary status. After reviewing the terms of this Consent Order, the Court concludes that the entry of this Consent Order comports with the objectives of the Fourteenth Amendment to the Constitution of the United States and applicable federal law, and, if properly implemented, will further the orderly desegregation of the Geneva County School District and is likely to bring about the creation of a unitary school district and the termination of judicial supervision.

It is therefore, ORDERED, ADJUDGED and DECREED as follows:



I.      **Background**

The factual and procedural history of this action has been previously set forth in the prior Consent Order. See May 22, 1997 Consent Order ("1997 Consent Order"), at 1-5. This Consent Order will only set forth the procedural and factual history relevant to the determination of defendant's present request for unitary status. On May 22, 1997, Geneva County School System was found to have achieved partial unitary status as to its assignment of students to schools, transportation, extra-curricular activities and facilities. See 1997 Consent Order, at 5. At that time the 1997 Consent Order was entered, the plaintiff-parties objected to a declaration of unitary status in three remaining areas: (1) faculty and staff; (2) student transfers; and (3) student assignment to special education. Id. at 5. After extensive negotiation, the school board agreed to implement further remedial measures to address the issues of non-compliance and to annually report its progress to the parties and the Court.

In November of 1999 and after three years of reporting, the school district asked the plaintiff-parties to agree that the system had achieved unitary status with respect to faculty and staff, student transfers, and special education. For the past ten months, the parties have exchanged information so that the plaintiff-parties may determine whether any vestiges of the prior de jure school system remain and have diligently engaged in negotiations to resolve the matter.

To award unitary status, a district court must determine (1) whether the school district has fully and satisfactorily complied with the court's decree for a reasonable period of time; (2) whether the vestiges of past discrimination have been eliminated to the extent practicable; and (3) whether the school system has demonstrated a good faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for the judicial intervention. Missouri v. Jenkins, 515 U.S. 70, 87-89 (1995); Freeman v. Pitts, 503

U.S. 467, 494 (1992) (same); Lee v. Etowah County Bd. of Educ., 963 F.2d 1416, 1425 (11th Cir. 1992) (same).

The parties acknowledge, as a matter of law, that a school district that has not yet achieved unitary status remains under an "affirmative duty to eliminate the effects of its prior unconstitutional conduct. To fulfill this duty, school officials are obligated not only to avoid any official action that has the effect of perpetuating or reestablishing a dual school system, but also to render decisions that further desegregation and help to eliminate the effects of the previous dual school system." Harris v. Crenshaw County Bd. of Educ., 968 F.2d 1090, 1094-95 (11th Cir. 1992).

## II.  Unitary Status

The parties agree that the Geneva County School System has achieved unitary status as to its assignment of students to special education and student transfers.

For the 1999-2000 school year, the Geneva County School System operated three schools: Geneva County (Hartford) (K-12); Samson (K-12); and Slocomb (K-12). The district-wide enrollment for the 1999-2000 academic year was 2693 students. Of that number, 2133 (79.2%) were white students, 497 (18.4%) were black students, and 63 (2.4%) were other minority students. Based on additional discovery by plaintiffs-parties and a review of the district transfers for the last three years, the parties agree that there is no discrimination based on race in the operation of the student transfer system.

Although the plaintiff-parties continue to find a disturbing number of black children disproportionately labeled mentally retarded and assigned to special education classrooms, the parties nonetheless agree that the school district has achieved unitary status in the area of special

education in light of the Consent Decree entered in <u>Lee v. Macon, et. al.</u>, C.A. No. 70-T-854, on August 30, 2000. Section VI.3 of the Decree provides:

> Upon entry of this Consent Decree, any Alabama LEA which remains under the jurisdiction of this or any other federal court pursuant to a terminal desegregation order may be granted a declaration of unitary status in the area of special education notwithstanding any pending claim by the plaintiff parties or any present violation by the LEA, and the United States and private plaintiffs agree not to oppose such a declaration in light of the commitments undertaken in this Decree by the State defendants.

Thus, the parties agree that the Board can be declared unitary in the areas of student transfers and special education. No further basis remains for the Court to continue jurisdiction in the case over those areas of the Board's educational activities. They are, therefore, appropriately returned to the exclusive control of the local governing body, the Geneva County Board of Education.

The plaintiff-parties contend that the Board has not achieved unitary status in the area of faculty and staff hiring, assignment and retention. The Board denies these findings, but has entered into this Consent Order to satisfy its continuing desegregation obligations. The board shall implement the provisions set forth below and shall report on its efforts to address the issues of non-compliance.

### III. Faculty and Staff Assignment and Hiring

#### 1. Recruitment

The Board will make every reasonable effort to increase the pool of black applicants from which it selects its teachers, staff and administrators and from which it fills all vacancies. It is expected that the Board's success in recruiting more black applicants will lead to its success in hiring and retaining more black faculty, staff and administrators. In the event that these efforts do not result in a significant increase in the black applicant pool over the next year, the Board

will reevaluate it recruitment efforts prior to the 2001-2002 school year. As used herein, "teachers" shall include all persons having or eligible for tenure under the Teacher Tenure Ace, Ala. Code § 16-24-1 to 16-24-38 (1987) and "support staff" shall include all persons having or eligible for tenure under the Fair Dismissal Act, Ala. Code § 36-26-100 to 36-26-108 (1991). With respect to recruiting new faculty, staff and administrators, the Board shall:

    a. having a representative of the Superintendent conduct on-site recruitment during annual career fair days for certified personnel at the following colleges and universities in Alabama on an annual basis: Alabama State University; Alabama A&M University; Tuskegee University; Troy State University in Troy; and Auburn University in Montgomery;

    b. developing and establishing internship opportunities with predominantly black teachers' colleges throughout Alabama; for example, Dothan City Schools, Ozark City Schools and Houston County School applied for and received a Title II teacher recruitment grant from the U.S. Department of Education to help them recruit and train 135 minority students to teach math and science in partnership with Troy State University;

    c. contacting the Southeastern Equity Center and the Alabama State Department of Education for recommendations relating to the recruitment, hiring and retention of minority teachers and implement the recommendations of the respective agencies;

    d. contacting the Troops to Teachers program and the Teach for America program and recruiting minority candidates through those programs;

    e. contacting other Alabama school districts with large black applicant pools for referrals of applications to ensure that those minority applicants are made aware of vacant positions in the Geneva County School District;

f. creating a "grow your own" program to expose high school students to "teaching assistant" experiences in local elementary schools and to encourage high school students to attend college in preparation for a teaching career;

g. creating and supporting a Future Educators Club at the district high school(s) for those students interested in becoming teachers;

h. surveying other school districts with regard to their successful strategies in recruitment and employment of qualified minority candidates;

i. actively supporting your existing and new minority staff. Commitment to a diverse staff spreads by word of mouth;

    i. Elicit the assistance of such groups as the Chamber of Commerce, the Mayor's office, community groups and school adopters to assist in the recruiting and welcoming of minority candidates to the school; and

    ii. Develop a handbook for new teachers which provides helpful information regarding life in the Geneva County community (such as, housing, social activities, churches, community groups and resources, etc.).

j. ensuring all faculty, but particularly current black staff, teachers, coaches, guidance counselors, principals and administrators, actively participate in recruitment efforts;

k. notifying candidates of potential federal loan forgiveness if they accept employment with the district (www.ed.gov/offices/OSFAP/Students/repayment/teachers);

l. consulting with community groups regarding recruitment strategies and the

identification of minority candidates; and

  m. continuing to advertise vacancy notices with historically African-American universities and teacher colleges in Alabama, with local and regional chapters of the NAACP, with the Montgomery-Tuskegee Times and the Dothan Eagle, and with the Alabama State Department of Education. Ensure that the vacancy notices arrive and are posted in enough time to be effective.

  i. Written vacancy announcements shall be created for each vacant position and shall contain, at a minimum, the following information: position title; salary; minimum; qualifications; closing date; the application procedures; the names, addresses and telephone numbers of school system employees to be contacted for additional forms and information; and the address for the submission of the job application.

  ii. Each vacancy announcement shall include the statement: "The Geneva County Board of Education is an Equal Opportunity Employer, and does not discriminate in employment on the basis of race, sex, age, religion, ethnic group, disability, or national origin."

  iii. For each vacancy in a certified position, at least thirty (30) days prior to the stated closing date for the acceptance of applications, the Board shall forward for advertisement a vacancy announcement to the appropriate office of the following entities:

  (a) The following historic black teacher's colleges located in the State of Alabama: Alabama State University; Alabama A&M University; and Tuskegee University.

  (b) The Alabama State Department of Education Placement Service; the Alabama Education Association (AEA)

      Placement Service in both Geneva County and Montgomery; the NAACP State of Alabama and Geneva County Chapters.

  (c) Single column ad to be run in the following African-American newspaper: the Montgomery-Tuskegee Times.

**2. Hiring**

Hiring for all positions in Geneva County school system shall be done on a non-discriminatory basis. Decisions for all positions will be made on a non-discriminatory basis, regardless of whether the applicant is a person presently employed by the Board or whether the applicant is a non-employee of the system; provided, however, this provision shall not prohibit the Board from transferring teachers or staff on a non-discriminatory basis. The Board shall maintain written procedures for filling staff, teacher, coach, guidance counselor, principal and administrator vacancies. With respect to the hiring of employees, the Board shall:

  a. ensure that the minimum qualifications for any certified position shall not exceed the qualifications required by Alabama Law;

  b. use standardized job application forms for filling all employee vacancies and shall elicit a permanent address and telephone number by which an applicant may be located for twenty-four (24) months following the application;

  c. use job application forms that require each applicant to provide relevant qualifications, and shall request the applicant's race for purposes of evaluating compliance with the provisions of the Court Order;

  d. accept job applications for any vacant position by mail, express delivery, fax,

or hand delivery only at the central office and date-stamp each application as soon as they arrive. The Superintendent, or his designee, shall acknowledge receipt of the job application and shall maintain a file containing all job applications until further order of the Court;

    e. consider all applicants for all vacancies for which they are qualified and which exist throughout the school system regardless of the applicant's stated preference;

    f. consider all applicants for each position for which they applied and for which they are qualified and that becomes vacant within twenty-four (24) months of submission of the job application, unless the applicant withdraws his or her application in writing, or the applicant cannot be located despite the best efforts of the school district to contact the applicant;

    g. review and evaluate your application forms, interview questions and existing written criteria for selecting candidates from among applicants for all school district positions to ensure that objective, non-discriminatory criteria are being used. Implement written criteria which evaluates each applicant's work experience, volunteer service, honors, awards, training skills, licenses and/or languages, in addition to his or her undergraduate or graduate grade point average;

    i. on page two of the current application form where it asks the candidate to list "any other special training," consider changing the wording to include "such as coaching, yearbook, or other extracurricular activities."

    h. advertise an open coaching position separately when multiple teaching vacancies exist;

    i. consider using a committee of three, such as the principal, the superintendent or other central office administrator, and a faculty member for hiring certified personnel;

j. notify school principals that hiring qualified minority staff, teachers, coaches, guidance counselors and assistant principals is a priority;

k. notify central office administrators that hiring qualified minority principals is a priority;

l. emergencies might arise that make it impossible for the school to hold a staff, teacher, coach, guidance counselor, principal or administrator vacancy open for a minimum of twenty days and require the District to hire a teacher on an interim basis. When such circumstances arise, the school district shall do the following: send out vacancy notices within one working day of learning of the emergency; allow the maximum amount of time practicable before filling the position; and contemporaneously file a report of the circumstances for the emergency hire with the United States and the private plaintiffs;

m. create a database of all applications received by name, by position, by race, by the date the application was received, by highest degree, by rank and type of certificate, and by area(s) of endorsement; and

n. Maintain a database of information on the hiring process for each vacancy filled, including, for each named position: (1) a list of all qualified applicants, by name, race, qualification and date application was filed; (2) all qualified applicants who completed the central screening process or any other informal screening process, by name and race; (3) all applicants referred or selected for an interview, by name, race, rank and type of certification, and area(s) of endorsement; (4) all applicants actually interviewed, by name, race, rank and type of certification, and area(s) of endorsement; (5) the applicant(s) offered the position, by name, race, degree, rank and type of certification and area(s) of endorsement; (6) the applicant who

ultimately filled the position, by name, race, degree, rank and type of certification, and area(s) of endorsement; and (7) the reasons that any minority applicants were not selected for such position.

### 3. Faculty Retention

With respect to assigning and retaining qualified minority personnel, the Board shall do the following:

    a. Create and implement support groups or programs for new and currently employed minority administrators, principals, coaches, teachers and staff, as well as cultural and racial diversity training targeted at all administrators, principals, coaches, teachers and staff;

    b. Consider transferring sixth or fifth grade minority elementary teachers with the proper certification to middle school positions in order to address the lack of minority teachers at the secondary level;

    c. Provide new teachers with high-performing senior teachers to serve as their mentors and assist them in developing the requisite knowledge, skills and abilities to secure tenure;

    d. Provide new teachers with a recommended sequential program of formal and on-the-job training that defines the qualifications of a "good teacher" and anticipates the demands that the new teacher will confront on his or her job;

    e. Consider providing teachers with a leave of absence to pursue the educational credentials and certifications required for promotion to guidance counselor, assistant principal and principal positions; and

    f. Continue the encouragement and development of staff, teachers, coaches,

guidance counselors, principals and administrators currently employed in the District.

## IV.     Record-keeping

The school district shall collect and maintain, using standardized forms or databases for all schools, the following data:

a. The number and percentage of full-time and part-time teachers, by race, district-wide and in each school in the district;

b. The number and percentage of full-time and part-time teachers, by race, who were voluntarily or involuntarily terminated from a school in the District during the most recent school year;

c. The number and percentage of principals, assistant principals, administrative assistants, and other support staff (separately listing both certified and non-certified staff), by race, in each school in the District;

d. The number of central office staff (separately listing both certified and non-certified staff, by race;

e. A list of all recruitment trips, including schools visited, date and duration of each visit, number of student contacts, and the recruiters visiting the school, by race and position;

f. A copy of any material modifications to the written hiring and assignment practices and procedures;

g. Any material modifications to the written tenure process and procedures;

h. A description of the Board's efforts to recruit and hire minority faculty and staff members, distinguishing between existing and newly formulated efforts;

i. Copies of all vacancy announcements that are posted and all advertisements that are

published;

j. For each vacancy filled, including, for each named position: (a) a list of all qualified applicants, by name, race, qualification and date application was filed; (b) all qualified applicants who completed the central screening process or any other informal screening process, by name and race; (c) all applicants referred or selected for an interview, by name, race, degree, rank and type of certification, and area(s) of endorsement; (d) all applicants actually interviewed, by name and race; (e) the applicant(s) offered the position, by name and race; (f) the applicant who ultimately filled the position, by name and race; and (g) the reasons that any minority applicants were not selected for such position;

The information obtained pursuant to the above paragraphs shall be shared with the Board of Education, principals, and appropriate central office administrators. The Superintendent and his staff shall analyze such data, and where appropriate, develop, for implementation by the Board, responses designed to address racial disparities.

## V.     Timetable

Except where otherwise stated, all provisions of this Consent Order shall be implemented immediately, beginning with the 2000-2001 academic year.

## VI.    Reporting

By January 31, 2001 and October 15, 2001, the Board shall report to the Court and parties the information as set forth in Section IV Record-keeping to demonstrate compliance with the provisions of this Consent Order. Any party that believes that it has grounds for an objection is required to contact the Board as soon as possible after the Board submits its Report to the Court, in order to try to resolve the objection informally. Only if a satisfactory

information resolution cannot be reached may a written objection be filed.

The plaintiffs and the United States shall submit comments on the Report, if necessary, to the Board and to the Court detailing any objections regarding Board compliance in the areas in which the Board has not been declared unitary.

The defendant Board shall remain under the jurisdiction of this Court until at least May 22, 2002. Thereafter, upon proper motion, the defendant may move for dismissal of this case and will show to the Court and the plaintiff-parties that the school district has complied with the provisions of the Consent Decree. The United States and private plaintiffs shall file any objection that they may have to the dismissal within thirty days of the filing of the defendant Board's motion for unitary status specifically pleading the factual and legal matters forming the basis for such objection. Each objection shall be pled individually and with particularity. If the parties can agree to dismissal, the parties shall file a stipulated record for dismissal and the Court shall render appropriate orders for full unitary status.

So ORDERED this /3th day of _Feb,_ 2001.

_____
United States District Judge

The undersigned consent to the entry of this Consent Order

FOR THE UNITED STATES OF AMERICA

*Sarah A. Dunne*
HELEN L. NORTON
Deputy Assistant Attorney General

MICHAEL S. MAURER
SARAH A. DUNNE
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
601 D Street, N.W., Suite 4300
Washington, D.C. 20530
(202) 514-6406

FOR PLAINTIFFS ANTHONY T. LEE, et al
FOR PLAINTIFF-INTERVENOR
NATIONAL EDUCATION ASSOCIATION

*Stanley F. Gray*
STANLEY F. GRAY
Gray, Langford, Sapp, McGowan, Gray & Nathanson
P.O. Box 830239
Tuskegee, AL 36083-0239
(334) 727-4830


FOR DEFENDANT GENEVA COUNTY BOARD OF EDUCATION

*M. Dale Marsh*
M. DALE MARSH
Cassady, Fuller & Marsh
203 E. Lee Avenue
Enterprise, Alabama 36331
(334) 347-2626